ORIGINAL
FILED

08 APR 25 ☐ 11: 30

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA S.J.

1    Ryan T. McCoy (State Bar No. 239882)
     **FULBRIGHT & JAWORSKI L.L.P.**
2    555 South Flower Street
     Forty-First Floor
3    Los Angeles, California 90071
     Telephone: (213) 892-9200
4    Facsimile: (213) 892-9494

5    M. Scott Incerto (Texas Bar No. 10388950) (*Pro Hac Vice* Application Pending)
     Adam T. Schramek (Texas Bar No. 24033045) (*Pro Hac Vice* Application Pending)
6    **FULBRIGHT & JAWORSKI L.L.P.**
     600 Congress Ave., Suite 2400
7    Austin, Texas 78701
     Telephone: (512) 536-5232
8    Facsimile: (512) 536-4598

9    Attorneys for Defendant **E-FILING**
     FREESCALE SEMICONDUCTOR, INC.
10

11

12              IN THE UNITED STATES DISTRICT COURT

13          FOR THE NORTHERN DISTRICT OF CALIFORNIA

14                    SAN JOSE DIVISION

15
16   FORTE TECHNICAL SALES, LLC,          )  Civil Action No.    C08-02153 HRL
     a California Limited Liability Company )
17                                         )
                     Plaintiff,            )
18                                         )  **NOTICE OF REMOVAL OF**
          v.                               )  **ACTION UNDER 28 U.S.C. § 1441(b)**
19                                         )
     FREESCALE SEMICONDUCTOR, INC., a      )  **(DIVERSITY)**
20   Delaware Corporation, and DOES 1 through 10, )
     inclusive,                            )
21                                         )
22                   Defendants.           )

23

24        Defendant Freescale Semiconductor, Inc. ("Freescale"), hereby files this Notice of

25   Removal of the above-described action to the United States District Court for the Northern

26   District of California, from the Superior Court of the State of California, County of Santa Clara

27   where the action is now pending as provided by 28 USC §§ 1441 and 1446 and states:

28

I.    **PROCEDURAL BACKGROUND**

1.    This cause was commenced on March 25, 2008 in the Superior Court of the State of California, County of Santa Clara, Case No. 108CV108900, captioned <u>Forte Technical Services, LLC v. Freescale Semiconductor, Inc.</u> (the "State Court Action").  The Complaint was received by Defendant's registered agent for service of process on March 28, 2008.  Plaintiff's service was inadequate under State law.  Such defect was cured by proper service on Defendant's registered agent for service of process on April 16, 2008.

2.    This Notice of Removal is timely filed with this Court within thirty (30) days after Defendant's receipt of a copy of the Complaint.

3.    A copy of all process, pleadings, and orders served upon Defendants is attached hereto as Exhibit A and filed with this Notice.

II.    **JURISDICTION**

4.    The United States District Court for the Northern District of California has original jurisdiction by reason of 28 U.S.C. § 1332.  The matter is between citizens of different states and the amount in controversy exceeds the sum of seventy-five thousand dollars ($75,000), exclusive of interest and costs.

A.    **There Is Diversity Of Citizenship Between The Parties.**

5.    At the time of commencement of this action in state court, and since that time, Plaintiff Forte Technical Sales, LLC ("Forte") is a California company whose members, Michael O'Neill and Jeff Leontini, were and are now citizens of the State of California.

6.    Defendant Freescale is incorporated and existing under the laws of the State of Delaware, having its principal place of business in the State of Texas.  Defendant is not a citizen of California, where the action was brought.

B.    **The Amount In Controversy Is More Than $75,000.**

7.    The State Court Action asserts claims against Freescale for:  (1) breach of contract; and (2) violation of California Civil Code § 1738.10 *et seq.*

8.    Forte claims to have suffered at least $250,000 in damages based on alleged unpaid commissions.  (Exhibit A, ¶ 13.)  In addition, Forte is seeking attorney's fees and treble damages based on California Civil Code §§ 1738.15 and 1738.16.  (Exhibit A, ¶¶ 16, 17, and Prayer for Relief.)

9.    Accordingly, the express allegations from the Complaint make it apparent that Forte is seeking to recover more than $75,000 in this action exclusive of interests and costs. Sanchez v. Monumental Life Ins. Co., 102 F.3d 398, 402 (9th Cir. 1996) (the amount of damages claimed by plaintiff controls unless there is a legal certainty that the plaintiff cannot recover damages equal to or greater than the jurisdictional amount); Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 376-77 (9th Cir. 1996); Conrad Assoc. v. Hartford Accident & Indem. Co., 994 F. Supp. 1196, 1198 (N.D. Cal. 1998) (jurisdictional minimum may be satisfied by claims for special and general damages, attorneys' fees and punitive damages).

## III.    INTRADISTRICT ASSIGNMENT

10.    Pursuant to Northern District Local Rule 3-2(c)-(d), this action is properly assigned to the San Jose Division of the United States District Court for the Northern District of California as the Complaint alleges that a substantial part of the events which gave right to this action occurred in Santa Clara County.  (Exhibit A, ¶ 3.)

## IV.    NOTICE TO PARTIES AND TO THE SUPERIOR COURT

11.    Defendants will give written notice of the filing of this notice as required by 28 U.S.C. § 1446(d).

12.    A copy of this notice will be filed with the Clerk of the Santa Clara Superior Court as required by 28 U.S.C. § 1446(d).

/ / /

/ / /

/ / /

1    WHEREFORE, Defendant requests that this action proceed in this Court as an action

2    properly removed to it.

3

4    Dated: April 25, 2008                    Ryan T. McCoy
                                             M. Scott Incerto
5                                            Adam T. Schramek
                                             **FULBRIGHT & JAWORSKI L.L.P.**
6

7

8

9                                            Ryan T. McCoy
                                             Attorneys for Defendant
10                                           FREESCALE SEMICONDUCTOR, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(b)

# EXHIBIT A

**POS-030**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| John C. Clark    (Bar # 144549)<br>RUSCONI, FOSTER & THOMAS, APC<br>30 Keystone Avenue<br>Morgan Hill, CA 95037<br><br>TELEPHONE NO.: (408) 779-2106<br>E-MAIL ADDRESS *(Optional)*: john@rftlawyer.com    FAX NO. *(Optional)*: (408) 779-1553<br>ATTORNEY FOR *(Name)*: FORTE TECHNICAL SALES, LLC , a California | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
STREET ADDRESS: 191 North First Street
MAILING ADDRESS: 191 North First Street
CITY AND ZIP CODE: San Jose 95113
BRANCH NAME: North First Street

PETITIONER/PLAINTIFF: FORTE TECHNICAL SALES, LLC, a California

RESPONDENT/DEFENDANT: FREESCALE SEMICONDUCTOR, INC.,a

| PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL | CASE NUMBER:<br>108CV108900 |
|---|---|

**(Do not use this Proof of Service to show service of a Summons and Complaint.)**

1.   I am over 18 years of age and **not a party to this action.** I am a resident of or employed in the county where the mailing took place.

2.   My residence or business address is: 30 Keystone Avenue
          Morgan Hill, CA 95037

3.   On *(date)*:    3/26/2008    I mailed from *(city and state)*: Morgan Hill, California
     the following **documents** *(specify)*:
     Notice and Acknowledgment of Receipt
     Summons
     Complaint for Damages
     [X]   The documents are listed in the *Attachment to Proof of Service by First-Class Mail—Civil (Documents Served)*
            (form POS-030(D)).

4.   I served the documents by enclosing them in an envelope and *(check one)*:
     a. [   ]   **depositing** the sealed envelope with the United States Postal Service with the postage fully prepaid.
     b. [X]   **placing** the envelope for collection and mailing following our ordinary business practices. I am readily familiar with this
               business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is
               placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in
               a sealed envelope with postage fully prepaid.

5.   The envelope was addressed and mailed as follows:
     a.   **Name** of person served: CSC-Lawyers Incorporating Service
     b.   **Address** of person served:
          2730 Gateway Oaks Drive
          Suite 100
          Sacramento, California 95833

     [   ]   The name and address of each person to whom I mailed the documents is listed in the *Attachment to Proof of Service
             by First-Class Mail—Civil (Persons Served)* (POS-030(P)).

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: March 26, 2008

          Deborah Crocker                                      *(signature)*
     (TYPE OR PRINT NAME OF PERSON COMPLETING THIS FORM)          (SIGNATURE OF PERSON COMPLETING THIS FORM)

Form Approved for Optional Use
Judicial Council of California
POS-030 [New January 1, 2005]

**PROOF OF SERVICE BY FIRST-CLASS MAIL—CIVIL**
**(Proof of Service)**

Code of Civil Procedure, §§ 1013, 1013a
www.courtinfo.ca.gov

LexisNexis® Automated California Judicial Council Forms

**POS-015**

| | FOR COURT USE ONLY |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>John C Clark    (Bar # 144549)<br>Rusconi, Foster & Thomas<br>30 Keystone Avenue<br>Morgan Hill, CA 95037<br>  TELEPHONE NO.: (408) 779-2106    FAX NO. *(Optional):* (408) 779-1553<br>  E-MAIL ADDRESS *(Optional):* john@rftlawyer.com<br>  ATTORNEY FOR *(Name):* FORTE TECHNICAL SALES,LLC,a California Limited | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
  STREET ADDRESS: 191 North First Street
  MAILING ADDRESS: 191 North First Street
  CITY AND ZIP CODE: San Jose 95113
  BRANCH NAME:

PLAINTIFF/PETITIONER: FORTE TECHNICAL SALES, LLC,a California Limited Liability Company

DEFENDANT/RESPONDENT: FREESCALE SEMICONDUCTOR, INC.a Delaware

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER:<br>108CV108900 |
|---|---|

TO *(insert name of party being served):* CSC - LAWYERS INCORPORATING SERVICE

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: March 26, 2008

_____
Deborah Crocker
(TYPE OR PRINT NAME)

_____
(SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of *(to be completed by sender before mailing):*
1. [X]  A copy of the summons and of the complaint.
2. [ ]  Other *(specify):*


*(To be completed by recipient):*

Date this form is signed:

_____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,
ON WHOSE BEHALF THIS FORM IS SIGNED)

_____
(SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>POS-015 [Rev. January 1, 2005] | **NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL** | Page 1 of 1<br>Code of Civil Procedure,<br>§§ 415.30, 417.10<br>www.courtinfo.ca.gov |

*LexisNexis® Automated California Judicial Council Forms*

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
FREESCALE SEMICONDUCOR, INC., a Delaware Corporation, and
DOES 1 through 10, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
FORTE TECHNICAL SALES, LLC, a California Limited Company

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

ENDORSED

2008 MAR 25 P 12: 32

FOR THE CLERK OF THE SUPERIOR COURT
COUNTY OF SANTA CLARA, CALIFORNIA

M. Rosales

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted puede usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol/) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA<br>191 North First Street, San Jose, California, CA 95113 | CASE NUMBER:<br>*(Número del Caso):*<br>1 08 C V 1 0 8 9 0 0 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

John C Clark (Bar # 144549)          Phone No.: (408) 779-2106
Rusconi, Foster & Thomas          Fax No.: (408) 779-1553
30 Keystone Avenue, Morgan Hill, CA 95037
DATE:          **MAR 25 2008**          Clerk, by M. Rosales          KIRI TORRE          , Deputy
*(Fecha)*          *(Secretario)*          *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served
[SEAL]
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

    under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership)          ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]          **SUMMONS**          Code of Civil Procedure §§ 412.20, 465
*LexisNexis® Automated California Judicial Council Forms*

```
 1  John C. Clark, Esq. (#144549)
    RUSCONI, FOSTER & THOMAS, APC
 2  30 Keystone Avenue
    Morgan Hill, California 95037
 3  (408) 779-2106

 4  Attorneys for Plaintiff,
    FORTE TECHNICAL SALES, LLC
 5

 6                                              M. Rosales

 7
               SUPERIOR COURT OF THE STATE OF CALIFORNIA
 8
                       COUNTY OF SANTA CLARA
 9

10
    FORTE TECHNICAL SALES, LLC,         CASE NO. 1 0 8 C V 1 0 8 9 0 0
11  a  California  Limited  Liability
    Company
12                                      COMPLAINT FOR DAMAGES
          Plaintiff,                    VIOLATION OF INDEPENDENT
13                                      WHOLESALE   SALES   REP.
       -vs-                             CONTRACTUAL RELATIONS
14                                      ACT; [CIVIL CODE §1738.10
    FREESCALE  SEMICONDUCTOR,  INC.,  a ET  SEQ.]  BREACH  OF
15  Delaware  Corporation,  and  DOES 1 WRITTEN CONTRACT
    through 10, inclusive.,
16
          Defendants.
17  _____/

18

19      COMES NOW Plaintiff FORTE TECHNICAL SALES, LLC, and complains

20  and alleges as follows:

21               FIRST CAUSE OF ACTION
                [Civil Code §1738.10, et seq.]
22

23      1.   Plaintiff FORTE TECHNICAL SALES, LLC ("FORTE"), is, and

24  at all times relevant herein was, a California Limited Liability

25  Company with its principal offices in the County of Santa Clara.

26      2.   Plaintiff is informed and believes, and based upon such

27  information  and  belief,  alleges  that  defendant  FREESCALE

28  SEMICONDUCTOR,  INC.  ("FREESCALE"),  is  a  Delaware  corporation,
```

COMPLAINT FOR DAMAGES                 1

1  registered to do business in the State of California, which has its

2  principal place of business in the city of Austin, State of Texas.

3      3.   Plaintiff alleges that the written contracts creating the

4  obligations on which this action is brought were entered into in

5  the County of Santa Clara, State of California. Plaintiff further

6  alleges that said obligations under the written contracts were to

7  be performed in the County of Santa Clara, State of California.

8      4.   Plaintiff is ignorant of the true names and capacities of

9  defendants sued herein as DOES ONE through TEN, inclusive, and

10 therefore sues these defendants by such fictitious names.

11 Plaintiff will amend this complaint to allege their true names and

12 capacities when ascertained. Plaintiff is informed and believes,

13 and based upon such information and belief, alleges that each of

14 the fictitiously named defendants is responsible in some manner for

15 the occurrences herein alleged, and that Plaintiff's damages as

16 herein alleged were proximately caused by their conduct.

17     5.   Except as otherwise expressly alleged herein, plaintiff

18 is informed and believes and therefore alleges that each defendant

19 was, at all relevant times, the agent or employee of the remaining

20 defendants identified in this complaint, and in doing the acts

21 herein alleged, acted within the scope of such agency or

22 employment.

23     6.   Plaintiff is, and at all times relevant was, engaged in

24 the business of soliciting wholesale orders for the purchase by

25 retailers of products manufactured, jobbed, or distributed by

26 others. Plaintiff is compensated by the manufacturer, jobber, or

27 distributor by commission payments.

28 ///

COMPLAINT FOR DAMAGES              2

1     7.   Defendant is, and at all times relevant was, engaged in

2  the business of manufacturing, jobbing, and distributing high

3  technology electronic components, parts, and products intended for

4  resale to or use by consumers, including California consumers.

5     8.   On or about May 31, 2007, plaintiff and defendant entered

6  into a written agreement (hereinafter "Agreement"), properly

7  declaring plaintiff a wholesale sales representative of defendant

8  for the term from July 1, 2007 until December 31, 2010 unless

9  earlier terminated.  The Agreement provides that plaintiff shall be

10  paid by retainer for the remainder of the calendar year 2007, and

11  then by commissions at rates set forth in the Agreement based upon

12  the type of sale.  A true and correct copy of the Agreement, dated

13  May 31, 2007, between plaintiff and defendant is attached hereto as

14  Exhibit "A" and incorporated herein by reference.

15     9.   The Agreement, at Section 5.4, allows either party to

16  terminate the Agreement, with or without cause, upon 30 days

17  advance written notice to the other party, but only upon prior good

18  faith attempts to arrive at an arrangement so as to avoid

19  termination.

20     10.  On or about October 29, 2007, defendant, without

21  satisfying its obligation under Section 5.4 to meet and confer, and

22  to attempt in good faith to avoid termination, issued to plaintiff

23  a written notice of termination of the Agreement, effective

24  December 31, 2007.

25     11.  Upon termination under Section 5.4, the Agreement

26  provides, at Section 5.5, that FREESCALE shall be obligated to

27  continue to pay commissions on Factory Direct Orders placed

28  within sixty (60) days of the effective date of termination and

COMPLAINT FOR DAMAGES       3

1    shipped within nine (9) months of the termination date; and on

2    Authorized Distributor Orders placed before the date of

3    termination and shipped within four (4) months of the termination

4    date.

5        12.   Between January 2008 and the filing of this complaint,

6    plaintiff has repeatedly requested that defendant acknowledge this

7    right to commissions, if arguably termination was effective even

8    without the fulfillment of meet and confer requirements, and to

9    provide sales and shipment data to calculate plaintiff's earned

10   commissions under the Agreement.  Despite these requests, defendant

11   has failed and refused to acknowledge the commission requirements

12   of the Agreement.

13       13.   Plaintiff was due to be paid commissions, approximated in

14   the range of $250,000 without benefit of sales data from defendant,

15   for the month of January 2008 and a similar amount for the month of

16   February 2008.   In addition, plaintiff is entitled to payment of

17   commissions through September 2008, based upon the terms of the

18   Agreement for termination.

19       14.   The State of California, by passage of the Independent

20   Wholesale Sales Representatives Contractual Relations Act of 1990

21   ("ACT"), requires that plaintiff and defendant have a written

22   contract which   provides the rate and method for payment of

23   commissions, the time when commissions will be paid, and the

24   assigned  territory. [Civil  Code  §1738.13(b)].   In addition,

25   plaintiff is entitled to an accounting of all orders in the

26   territory, including customer name and invoice number and the rate

27   of commission on each order.  Finally, the State has decreed that

28

COMPLAINT FOR DAMAGES                    4

1  no such contract may contain any provision which waives any rights

2  established by the ACT. [Civil Code §1738.13(e)].

3  ///

4      15.  In direct contravention of the Agreement and the ACT,

5  defendant has refused, and continues to refuse, to pay commissions

6  and provide accounting information to plaintiff.

7      16.  Plaintiff alleges and believes that defendant's failure

8  to pay commissions and provide accounting information was, and

9  continues to be, willful.  As such, plaintiff is entitled to treble

10  damages at trial pursuant to Civil Code §1738.15.

11      17.  Defendant's actions further entitle the prevailing party

12  to reasonable attorney's fees and costs in addition to any other

13  recovery.

14      WHEREFORE, plaintiff prays for judgment against defendant as

15  set forth hereinbelow.

16

17  **SECOND CAUSE OF ACTION**
**(Breach of Written Contract)**

18      18.  Plaintiff realleges Paragraphs 1 through 17 as though set

19  forth fully herein.

20      19.  By failing to satisfy and fulfill its obligation to meet

21  and confer in good faith to avoid termination, and instead by

22  unilaterally terminating the Agreement for its own pecuniary

23  interest, defendant has materially breached the Agreement.

24      20.  Plaintiff dutifully and competently performed its

25  services and obligations under the Agreement, and defendant had no

26  reason or cause to terminate the Agreement, instead doing so

27  without regard to its obligation to first attempt in good faith to

28  avoid any termination of the Agreement.  Plaintiff alleges that,

COMPLAINT FOR DAMAGES                    5

1  had defendant fulfilled its duty to meet and confer in good faith
2  prior to termination, defendant would not have terminated the
3  Agreement.

4      21.  As a direct and proximate result of defendant's breach of
5  the Agreement, plaintiff has been denied the right and opportunity
6  under the Agreement to act as independent sales representative for
7  defendant from January 1, 2008 until December 31, 2010.  Plaintiff
8  estimates this has damaged plaintiff, and will continue to damage
9  plaintiff in an amount representing the net commission receipts for
10 the years of 2008 through 2010.

11     WHEREFORE, plaintiff prays for judgment against defendant as
12 set forth hereinbelow.

13                    **THIRD CAUSE OF ACTION**
                 **(Breach of Written Contract)**
14

15     22.  Plaintiff realleges Paragraphs 1 through 21 as though set
16 forth fully herein.

17     23.  By failing to satisfy and fulfill its obligation to pay
18 commissions to plaintiff on termination of the Agreement as
19 identified in Section 5.5 of the Agreement, defendant    has
20 materially breached the Agreement.

21     24.  As a direct and proximate result of defendant's breach of
22 the Agreement, plaintiff has been denied payment of its commissions
23 due on termination.  In addition, plaintiff continues to be denied
24 payment of commissions as required through September 2008.

25     WHEREFORE, plaintiff prays for judgment against defendant as
26 set forth hereinbelow.

27

28

COMPLAINT FOR DAMAGES.              6

1.   For compensatory damages, in an amount to be proven at the trial herein, for defendant's failure to properly terminate the Agreement as required by Section 5.4;

2.   For compensatory damages for unpaid commissions earned after December 2007 up to the date of trial according to proof;

3.   For treble damages on unpaid commissions pursuant to Civil Code §1738.15;

4.   For interest from and after the time each unpaid commission was due at the legal rate;

5.   For reasonable Attorney's Fees and costs pursuant to Civil Code Section 1738.16; and

6.   For such other relief as the Court deems just and proper.

Dated:  March 20, 2008

_____
John C. Clark
RUSCONI, FOSTER & THOMAS
Attorneys for Plaintiff,
FORTE TECHNICAL SALES, LLC

COMPLAINT FOR DAMAGES            7

## SALES REPRESENTATIVE AGREEMENT

**THIS REPRESENTATIVE AGREEMENT** ("**Agreement**") is effective as of _____ _____or, if left blank, the date of last signature below ("**Effective Date**"), is by and between Freescale Semiconductor, Inc, having offices at 6501 William Cannon Drive West, Austin, Texas 78735-8598 ("**Freescale**"), and Forte Technical Sales, LLC having offices at 2680 North First Street, Suite # 210, San Jose, Ca 95134 ("**Representative**").

### Recitals

A.     Freescale is in the business of designing and manufacturing semiconductor products. Freescale desires to appoint Representative as a sales representative, subject to the terms of this Agreement.

B.     Representative desires to serve as a Freescale as a sales representative, subject to the terms of this Agreement.

### Agreement

Freescale and Representative agree as follows:

**1.     DEFINITIONS**

The following capitalized terms used in this Agreement have the meaning set forth below:

"**Account**" means either (i) a group of customers within a four character territory code or (ii) a customer identified by the five character customer code, which Freescale assigns to a specific customer billing location.

"**Affiliate**" means, in relation to any party, any corporation or entity directly or indirectly controlling, controlled by, or under common control with that party whether through the ownership of voting securities, management control, contract or similar arrangement.

"**Authorized Distributors**" means those distributors authorized by Freescale to sell Freescale Products.

"**Authorized Distributor Orders**" means orders for Products from Authorized Distributors.

"**Commission**" means the commission set forth in Exhibit B for Representative Assigned Accounts.

1

"**Confidential Information**" means any information disclosed by one party to the other party that (i) if disclosed in writing or in some other tangible form, is marked at the time of disclosure as being "Confidential" or "Proprietary" or with words of similar import, or (ii) if disclosed orally or by inspection, is identified at the time of disclosure as confidential and is summarized in a written memorandum transmitted to the receiving party within 30 days after the disclosure with enough specificity for identification purpose. Confidential Information does not include any information that: (a) is, or becomes, publicly known through no wrongful act on the receiving party's part; (b) is already known to the receiving party, or becomes known to the receiving party without restriction on disclosure; (c) is independently developed by the receiving party; or (d) is furnished by the disclosing party to a third party without an obligation of confidentiality. Additionally, the following items are Confidential Information of Freescale (i) customer lists, whether provided by Freescale or developed by Representative on behalf of Freescale, and all drawings, diagrams, specifications, and other materials furnished by Freescale and identified as confidential relating to the use and service of articles furnished thereunder, and the information therein, and (ii) all MDMS computer programming, system development, and analysis material are proprietary to Freescale. Such materials have been developed at great expense, and contain trade secrets or other confidential information of Freescale.

"**Design Win**" means a design win for an opportunity that has been loaded into Freescale's Customer Relationship Management system for a minimum of 30days. The Representative must provide documentation (award letter, LOI or order for a minimum of $1K of evaluation board, tools and/or samples sales) from the end customer designating that Freescale Products have been selected for that opportunity.

"**Design Win Incentive**" means the amount Freescale will pay Representative for a Design Win.

"**Design Win Worth**" means the realistic revenues projected by Freescale for a Design Win.

"**Exhibits**" means the following exhibit(s) attached to this Agreement, as modified from time to time, which are incorporated into this Agreement:

Exhibit A – Freescale Assigned Accounts
Exhibit B – Representative Assigned Accounts
Exhibit C – Freescale Code of Conduct

"**Factory Direct Orders**" means those orders for Products physically shipped and invoiced by Freescale to a Freescale coded customer rather than through an Authorized Distributor.

"**Freescale Assigned Accounts**" means those Accounts listed in Exhibit A. These accounts, as classified by Freescale in its sole discretion from time to time, are serviced by and sold to directly by Freescale.

2

**"Net Sales Billed"** means the total of all sales resulting from Representative Assigned Account Orders that have been physically shipped to and invoiced for the Representative Assigned Accounts, less any return credits, allowances or adjustments, freight, insurance, COD charges, and the like.

**"Net Sales Billed Growth"** means the Net Sales Billed in the current year less the Net Sales Billed for the previous year.

**"Products"** means all silicon products manufactured and sold by Freescale and excludes development tools and software.

**"Representative Assigned Accounts"** means those accounts listed in Exhibit B and excluding those Accounts listed in Exhibit A.

**"Representative Assigned Account Orders"** means Factory Direct Orders or Authorized Distributor Orders for Representative Assigned Accounts.

**"Subsidiary"** means, in relation to any party, any corporation or entity directly or indirectly controlled by that party whether through the ownership of voting securities, management control, contract or similar arrangement.

**"Territory"** means the geographical territory represented by a territory code listed in Exhibit B.

## 2.    APPOINTMENT

2.1    <u>Appointment</u>.  Freescale hereby appoints Representative as its non-exclusive representative to solicit Product orders from Representative Assigned Accounts on behalf of Freescale and to perform the duties and responsibilities set forth in this Agreement.

2.2    <u>Freescale Rights</u>.  Freescale may in its sole discretion:

(A)    appoint additional representatives for the Products at the Representative Assigned Accounts;

(B)    sell Products directly or through authorized distributors to the Representative Assigned Accounts; and

(C)    add or delete Products.

3

2.3    Reclassification.  Freescale may from time to time review the list of customers designated as Freescale Assigned Accounts (Exhibit A) and Representative Assigned Accounts (Exhibit B), for possible reclassification, and will discuss proposed changes with Representative.  Freescale may make decisions regarding reclassification in its sole discretion, but will provide written notice to Representative at least 30 days prior to the effective date of any reclassification.  In the event of such a reclassification, Freescale will compensate Representative as follows:

    (i)    Factory Direct Orders: Freescale will pay Commissions on Factory Direct Orders acknowledged within 30 days after the effective date of reclassification and shipped within __ months of the effective date of reclassification.

    (ii)    Authorized Distributor Orders: Freescale will pay Commissions on Authorized Distributor Orders, if such orders are shipped within 4 months of the effective date of reclassification.

## 3.    REPRESENTATIVE'S OBLIGATIONS

3.1    Solicitation.  Representative will solicit Product orders for the Representative Assigned Accounts on behalf of Freescale.  In soliciting orders, Representative will (i) use Freescale approved forms, (ii) provide a competent sales force adequate to cover the Representative Assigned Accounts, and (iii) apply its best efforts to promote the business and welfare of Freescale.

3.2    Freescale Assigned Accounts.  Representative is not expected to solicit orders with Freescale Assigned Accounts and is entitled to no compensation for sales to these Accounts.

3.3    Independent Contractor.  Representative is an independent contractor for the performance of services under this Agreement.  Freescale will neither exercise nor have control over Representative's methods or means of operation, except as is otherwise specifically set forth in this Agreement.  Representative will be the sole employer and principal of any and all persons providing services under this Agreement, and will be obligated to perform all requirements of an employer under federal, state, and local laws and ordinances.  Representative's employees or agents (i) are not Freescale employees, and (ii) are not entitled to participate in profit sharing pension, or other plans established for the benefit of Freescale employees.

3.4    Freescale SOPs and Code of Conduct.  Representative will conduct itself in accordance with (i) Freescale standard operating procedures, to the extent Freescale notifies Representative of such applicable procedures and provides a copy, and (ii) the relevant sections of Freescale's Code of Conduct, as applicable to Representative's business.  A copy of the Code of Conduct is incorporated as Exhibit C.  Should Representative require interpretation of any section of a Freescale standard operating procedure or the Code of Conduct, it should contact the Freescale Law Department.

4

3.5     Trademarks and Tradenames.  Representative will use the corporate name of Freescale, or any Freescale trademark or tradename, registered or unregistered in the United States, only in connection with the solicitation of orders for Freescale Products and then only in accordance with Freescale guidelines.

3.6     Conflict of Interest.  Representative will not represent any person, firm, corporation, or entity manufacturing or selling items that are competitive with Freescale's products and services unless specifically authorized in writing by Freescale.  In addition, Representative will notify Freescale in writing prior to discussions with any third party regarding the sales representation or solicitation of that party's product lines.

3.7     Hiring Employees.  Representative will maintain a minimum of five employees to solicit Freescale orders and strive to have at least eight employees by the end of CY2007.  Representative will obtain Freescale's written approval prior to replacing any employees or hiring any new employees.

3.8     Compliance with Laws.  Representative, including its officers, directors, employees and agents, will (i) use only legitimate and ethical business practices in the activities contemplated by this Agreement, (ii) comply fully with all laws applicable to Representative's business, including but not limited to the U.S. Foreign Corrupt Practices Act, all U.S. laws and regulations regarding export licenses or the control or regulation of exportation or re-exportation of products or technical data, and local anti-corruption laws, (iii) never pay, offer, promise, or authorize the payment, directly or indirectly, of any monies or anything of value to any government official or employee, any political party or candidate for political office, or any employee or official of a public international organization, for the purpose of inducing or rewarding any favorable action or obtaining any improper advantage in any commercial transaction or in any governmental matter, and (iv) disclose any commissions, fees, or other types of compensation as required under applicable law.  Both Freescale and Representative will take all necessary steps to satisfy any laws or requirements to declare, file, record or otherwise render this Agreement valid.  Representative represents that neither it nor its owners, officers, or employees are agents, employees, officers, or representatives of any government or any agency or other instrumentality of any government.  Representative will promptly inform Freescale of any change in such status or representation.

3.9     U.S. Government Contracts.  Freescale does not consent to be bound by any of the provisions in contracts with the U.S. Government or with the terms and conditions in any prime or subcontract to the U.S. Government unless Freescale has agreed to those contract provisions explicitly in writing.

5

## 4.    COMPENSATION

4.1    <u>CY2007 Retainer Plan</u>.  For CY2007 only, Freescale will pay Representative a retainer fee of $70,000 per calendar month plus $10,000 per month for each additional person (up to 3) employed during the complete duration of that month.

4.2    <u>Commission Plan</u>.  Starting in CY2008, Freescale will pay Commissions and Design Win Incentives to Representative for its efforts on behalf of Freescale.  These Commissions and Design Win Incentives are the only compensation to which Representative is entitled under the terms of this Agreement.  Representative will not be reimbursed for any expenses incurred in connection with this Agreement or for any losses in projected revenues resulting from Product shortages or quality issues for any Representative Assigned Account.

(A)    <u>Payment Process</u>.  At the end of each month, Freescale will total the amount of all Commissions during the month and generate an internal invoice.  Freescale will pay the amount of this invoice to Representative within 45 days of invoice generation.

(B)    <u>Net Negative Commission Credit</u>.  When, for a specific month, refunds and credits exceed Net Sales Billed, a net negative Commission credit exists. If Freescale anticipates that Representative will receive further Commissions, the negative Commission credit will be applied during the next Commission period before payment is made. If Freescale anticipates that Representative will not receive any further Commissions within ninety (90) days, the Representative will refund the net negative amount to Freescale within forty-five (45) days of written notification by Freescale.

(C)    <u>Commission Sharing</u>.  If Representative solicits orders for a Representative Assigned Account that has one or more locations outside of the Territory, then Commissions for these locations will generally be based upon the extent and value of the participation of Representative.  This may result in a sharing of credit by Representative with other representatives, authorized distributors, or Freescale's direct sales force. In order to qualify for a shared Commission credit, Representative must request Commission credit prior to acceptance of the order by Freescale. Freescale has sole and exclusive discretion in the matter of multi-location Commission credit.

4.3    <u>Quotas</u>.  Mutually agreed upon sales quota goals for Representative will be established annually.  The establishment of sales quotas is intended as a tool for measuring performance.  Failure to make a quota will not constitute grounds for termination for cause but may influence a decision by Freescale to terminate for convenience.

4.4    <u>Advance Payments</u>.  Freescale will not make advance payments to Representative (i.e., payments made before Freescale is paid). Any exceptions must be approved in writing by Freescale's relevant controller with the concurrence of the general manager at the Division level or above.

6

## 5.    TERM AND TERMINATION

5.1    Term.  This Agreement will be in force from July 1st, 2007 until December 31st, 2010, unless terminated earlier pursuant to this Section 5.

5.2    Immediate Termination.  Either party may terminate this Agreement immediately by notifying the other party of such termination in writing if:  (i) the other party becomes insolvent or bankrupt or admits its inability to pay debts as they mature, or makes an assignment for the benefits of its creditors, or ceases to function as a going concern or to conduct its operations in the normal course of business, (ii) control of the other party is acquired by another enterprise reasonably considered by the terminating party to be a competitor of such terminating party (a "Competitor"), or (iii) the other party acquires control of a Competitor.  As used herein, "control" means the direct or indirect ability or power to direct, or cause the direction of, the management and policies of a party, whether through the ability to vote a party's securities, by contract or otherwise.  Freescale may terminate this Agreement immediately by notifying the Representative of such termination in writing if the Representative has a significant reduction in workforce.

5.3    Termination for Breach.  If either party breaches this Agreement in any manner (other than as set forth in Section 5.2), the other party may terminate this Agreement, by providing written notice to the other party of the occurrence and nature of the breach.  The breaching party will have 30 days from the date it receives notice to correct the breach, after which time, this Agreement automatically terminates upon written notice from the non-breaching party.

5.4    Termination for Convenience.  Either Party may terminate this Agreement, with or without cause at its sole discretion, upon 30 days advance written notice to the other party, provided that neither party may exercise this termination right unless prior thereto the parties have conferred and discussed the reasons why such action is being contemplated and have attempted in good faith to arrive at an arrangement to avoid the contemplated termination.

5.5    Freescale Non-Renewal, Representative Termination for Cause or Freescale Termination for Convenience.  If this Agreement expires and is not renewed by Freescale, or is terminated by Representative pursuant to Sections 5.2 or 5.3, or is terminated by Freescale pursuant to Section 5.4, Freescale will pay Commissions as set forth below. These Commissions are Representative's exclusive compensation for any such expiration or termination:

(A)    Factory Direct Sales:  Freescale will pay Commissions on Factory Direct Orders placed before effective date of expiration or termination and shipped within six (6) months of the effective date of expiration or termination. For those accounts, Freescale will pay Commissions on Factory Direct Orders placed within sixty (60) days of the effective date of expiration or termination and shipped within nine (9) months of the effective date of expiration or termination.

(B)    Authorized Distributor Orders:  Freescale will pay Commissions on Authorized Distributor Orders placed before effective date of expiration or termination and shipped within four (4) months of the effective date of expiration or termination.

7

5.7    Representative Non-Renewal or Termination for Convenience.  If this Agreement expires and is not renewed by Representative, or is terminated by Freescale pursuant to Sections 5.2 or 5.3, or is terminated by Representative pursuant to Section 5.4, no Commissions will be paid to the Representative for any shipments after the termination date and Representative will not engage in the representation of any other semiconductor supplier for a period of twelve (12) months after termination date, without written consent of Freescale.

5.8    Return of Freescale Property.  Upon termination of this Agreement by either Freescale or Representative, all items belonging to Freescale in the possession of the Representative will be promptly returned to the appropriate Freescale Area Sales Manager.

## 6.    LIMITATION OF LIABILITY

IN NO EVENT WILL EITHER PARTY BE LIABLE, WHETHER IN CONTRACT, TORT, OR OTHERWISE, FOR ANY INCIDENTAL, SPECIAL, INDIRECT, CONSEQUENTIAL OR PUNITIVE DAMAGES, INCLUDING, BUT NOT LIMITED TO, DAMAGES FOR ANY LOSS OF USE, LOSS OF TIME, INCONVENIENCE, COMMERCIAL LOSS, OR LOST PROFITS, SAVINGS, OR REVENUES, TO THE FULL EXTENT THESE MAY BE DISCLAIMED BY LAW. THE FOREGOING LIMITATION DOES NOT LIMIT THE PARTIES' EXPRESS OBLIGATIONS UNDER SECTION 10, OR LIMIT THE PARTIES' LIABILITY FOR BREACH OF CONFIDENTIALITY OBLIGATIONS EXPRESSLY SET FORTH IN SECTION 13.

## 7.    REPRESENTATIVE RESTRICTIONS

7.1    Customer Certification. Factory Direct Orders will be accepted only from accounts assigned a Freescale five character customer code.  A Freescale Customer Certification Form must be completed and on file at Freescale before assignment of a five character customer code and subsequent acceptance of Factory Direct Orders can occur. Freescale, at its sole discretion, may require that existing accounts be re-certified as a condition for future sales.

7.2    Order Acceptance.  All orders solicited or obtained by the Representative will be subject to acceptance or rejection by Freescale at its sole discretion. Representative agrees it will not have any right or authority to accept any order or to assume or create any obligation, express or implied, on behalf of Freescale. Representative will not be entitled to any commission on orders not accepted by Freescale.

7.3.    Prices.  Representative will solicit orders for Freescale Products only at such current prices as may be periodically established in writing or quoted by Freescale.

7.4    Invoices and Collection.  Representative agrees that it will have no authority to collect any payments on behalf of Freescale from Freescale customers.

8

7.5    Terms of Sale.  Representative will have no authority to, and will not, vary from the terms and conditions provided in the Freescale sales order form as it may be changed from time to time by Freescale in its sole discretion. Nor will Representative make any allowances or adjustments in accounts or authorize the return of any Products without first obtaining, in each and every instance, Freescale's prior written approval.

7.6.    Critical Component Liability.  Freescale products are not designed, intended, or authorized for use as critical components in life support or safety devices or systems or for any other application in which the failure of Freescale's product could create a situation where personal injury or death may occur.  Products are also not intended or authorized for use in anti-personnel landmines.  Representative will not solicit or sell Products for any such application without Freescale's advance written consent.

7.7    Customers Denied Permission.  Freescale may periodically inform Representative that certain customers have sought and been denied permission to purchase certain Freescale products for such uses directly from Freescale.  Representative agrees, upon being so informed, to take reasonable action to prevent solicitation and sales of the Freescale products in question for such uses to any such identified customers.

7.8    Sale Contrary to instructions.  If Representative makes the sale despite Freescale's instruction to the contrary;

    (A)    This Agreement may be immediately terminated by Freescale for cause, and:

    (B)    Representative agrees to indemnify and hold Freescale, and its officers, employees, subsidiaries, affiliates, and Representatives harmless against all claims, costs, damages, and expenses, and reasonable attorney fees arising out of, directly or indirectly, any claim of personal injury or death associated with such unauthorized use, even if such claim alleges that Freescale was negligent regarding the design or manufacture of the product.

7.9    No Product Obligation.  Freescale will be under no obligation to the Representative to continue its business or to continue to manufacture, sell, or supply any of the Products and Freescale will be under no obligation to the Representative to continue, discontinue, or change any model or type of any of the Products.

7.10    Export Exclusions.  All export business, regardless of origin, will be excluded from the Agreement and Freescale will be under no obligation to pay Commissions on exports out of the United States unless negotiated before the order is placed and accepted.

9

## 8.    INFORMATION AND SUPPORT

8.1    <u>Freescale Provides</u>.  Freescale will provide to Representative with the following information and support:

(A)    Sales literature, technical data, and promotion material;
(B)    Representative sales reports and commission documentation;
(C)    Field Engineering support and Sales support:
(D)    Market data and information pertinent to sales and prospective sales within Representative's assigned Territory;
(E)    Quotation Forms;
(F)    Terms and Conditions of Sale Forms.

8.2    <u>Representative Provides</u>.  Representative will provide Freescale with the following information and support:

(A)    All additions and deletions to Representative's current line sheet either before or at the time of their effective date;
(B)    Monthly active prospect inventories of sales opportunities currently being explored;
(C)    Any relevant financial or other information regarding existing and potential customers with whom Representative may come in contact;
(D)    Periodic, special sales, and operating reports as may be requested from time to time by Freescale;
(E)    Reasonable effort to assure active participation and attendance by Representative's employees in sales meetings and training sessions held by Freescale on behalf of Representative:
(F)    Reasonable effort to communicate information to Representative Assigned Accounts regarding process change notifications and end of life buys.

## 9.    REPRESENTATIVE'S INSURANCE

9.1    <u>Types of Insurance</u>.  Representative will maintain the following forms of insurance in full force and effect:

(A)    Worker's Compensation within statutory limits and Employer's Liability of $1,000,000 per person (including occupational disease insurance);

(B)    Commercial General Liability, including personal injury extension, products/completed operations, independent contractor endorsement and broad form contractual liability for the following amounts: $1,000,000 Combined Single Limit (Bodily Injury/Personal Injury) or $1,000,000 Per Person Bodily Injury/Personal Injury; $500,000 Property Damage;

10

(C)     Automobile liability insurance for vehicles owned or operated by Representative, with a combined single limit of liability of no less than $1,000,000.

9.2     Additional Requirements.  Representative will: (i) name Freescale as an additional insured for items (B) and (C) above; (ii) provide Waiver of Subrogation under Workers Compensation and Employers' Liability; (iii) identify its insurance as "primary" for Representative's work and related activities; and (iv) provide appropriate certificates of insurance reasonably acceptable to Freescale, or other evidence of such insurance coverage to Freescale prior to start of the Services. Such insurance coverage will provide for a thirty (30) days minimum cancellation notice to Freescale. The procurement and maintenance of the insurance coverage's will not limit or affect any liability which Representative may have by virtue of this Agreement or otherwise.

(A)     Representative will (i) not perform any services under this Agreement until it has met the requirements of this Section 9, and (ii) provide appropriate certificates or other evidence of such insurance to Freescale promptly, upon request.

(B)     Freescale may require other reasonable forms of insurance or faithful performance guarantee bonds by giving Representative reasonable prior notice.

## 10.  INDEMNIFICATION

Representative will indemnify, release, defend and hold harmless Freescale and its officers, directors, employees and agents from and against all claims, proceedings, losses, penalties, damages or actions, and all expenses incidental to any investigation, negotiation or defense thereof, including, but not limited to, reasonable attorney fees, based upon, arising out of, or in connection with: (i) damage or injury (including death) to persons, property, reputation, or business opportunity, caused by or sustained in connection with the performance of services under this Agreement, except for damage or injury resulting solely and directly from Freescale's gross negligence or willful misconduct; (ii) Representative's refusal or failure to comply with any of the requirements of this Agreement; (iii) any material misrepresentation, warranty, or omission, whether written or oral, made by Representative in connection with this Agreement or the application process.

## 11.  AUDITS

Freescale reserves the right, on reasonable notice and during regular business hours, and at its expense, to audit Representative's compliance with this Agreement and the policies and procedures employed by Representative in effectuating it. Representative agrees to assist Freescale and to cooperate fully in any such audit. Examples of records and processes subject to audit include, but are not limited to, the following: compliance to government laws and regulations, compliance to record retention requirements, order entry procedure, handling of confidential information, account certification, and compliance to the Freescale Code of Conduct.

11

## 12.    FORCE MAJEURE

No party will be liable for any delay or non-performance of its obligations under this Agreement resulting from a "Force Majeure Event". "Force Majeure Event" means an event that is: (1) beyond the reasonable control of the party claiming a Force Majeure Event, (2) not reasonably foreseeable, (3) not due to the fault or negligence of the party claiming a Force Majeure Event, and (4) not capable of being overcome without unreasonable expense. The party claiming a Force Majeure Event will notify the other party immediately upon learning of the likelihood or existence of the Force Majeure Event. The party claiming a Force Majeure Event must exercise reasonable efforts to mitigate the effect of the Force Majeure Event. A party impacted by a Force Majeure Event will be entitled to an equitable adjustment in the performance of its obligations that were excused by the Force Majeure Event. If the duration or impact of a Force Majeure Event becomes material, the parties can determine whether to terminate the Agreement.

## 13.    PROTECTION OF INFORMATION

13.1    Duty of Confidentiality.  During the term of this Agreement and for a period of 3 years from the expiration or termination of this Agreement, a receiving party will (i) not disclose Confidential Information to any third party; (ii) restrict disclosure of Confidential Information to only those employees, agents or consultants of the receiving party who must be directly involved with the Confidential Information for the purposes of this Agreement and who are bound by confidentiality terms substantially similar to those in this Agreement; (iii) not reverse engineer, de-compile or disassemble any Confidential Information; (iv) use the same degree of care as for its own information of like importance, but at least use reasonable care, in safeguarding against disclosure of Confidential Information; and (v) promptly notify the disclosing party upon discovery of any unauthorized use or disclosure of the Confidential Information and take reasonable steps to regain possession of the Confidential Information and prevent further unauthorized actions or other breach of this Agreement.

13.2    Protection of Business Information.  Representative agrees not to use Representative's knowledge of Freescale business for the benefit of any other person or entity, or divulge to others information or data, including Confidential Information, concerning Freescale's business affairs, including, but not limited to, the names of customers, names and qualifications of employees or organizational structures, number or character of contracts, marketing or manufacturing processes, equipment or strategies, products, facilities, prices, terms, or particulars of Freescale's business, whether by sale, gift or any device, subterfuge, or evasion. Representative agrees, in all things and in good faith, to protect the good will of Freescale's business affairs acquired prior to and during the term of Agreement.

13.3    Required Disclosure.  If a party is required by law in any judicial or governmental proceeding or otherwise to disclose any Confidential Information belonging to the other party, the first party will give to the other party prompt written notice of the request so that the other party may seek a protective order or appropriate remedy. If, in the absence of a protective order, the first party determines, upon the advice of counsel, that it is required to disclose Confidential Information belonging to the other party, it may disclose the documentation only to the extent compelled to do so.

12

13.4    <u>Ownership and Return.</u>  Confidential Information remains the property of the disclosing party and will not be copied without the express written permission of the disclosing party, except for copies that are absolutely necessary in order to perform its obligations under this Agreement. Upon expiration or termination of this Agreement, a receiving party will return all Confidential Information to the disclosing party along with all copies and portions thereof, or, if acceptable to the disclosing party, certify in writing that all Confidential Information has been destroyed. However, the receiving party may retain one archival copy of the Confidential Information, which it may use only in case of a dispute concerning this Agreement.

## 14.    NOTICES

All notices and other communications under this Agreement will be made in writing, and will be effective when received at the following addresses:

      Freescale:    Contracts Management Organization
                    7700 West Parmer Lane, MD: PL02
                    Austin, TX 78729
    Representative: <u>Forte Technical Sales</u>
                    <u>2680 North First Street</u>
                    <u>Suite # 210</u>
                    <u>San Jose, Ca 95134</u>

    Either party may change its notice information upon notice to the other party.

## 15.    GENERAL

15.1    <u>Export.</u>  Representative will not resell, re-export, or ship, directly or indirectly, any products or technical data in any form without obtaining appropriate export or re-export licenses from the United States Government.

15.3    <u>Survival.</u>  Upon the expiration or termination of this Agreement for any reason, the following Sections survive: 1, 5, 6, 10, 12, 13, 14, and 15.

15.4    <u>Publicity.</u>  Neither party may issue any press release or make any public disclosure regarding this Agreement or its contents without the prior written consent of the other party, which consent will not be unreasonably withheld or delayed.

15.5    <u>Relationship of the Parties.</u>  The parties are independent contractors. Nothing in this Agreement will be construed to create any partnership, joint venture, or similar relationship. Neither party is authorized to bind the other to any obligations with third parties.

13

15.6    Severability.  If any provision of this Agreement is held invalid or unenforceable, the remaining provisions of this Agreement will be unimpaired and the invalid or unenforceable provision will be replaced with a provision that is valid and enforceable and that comes closest to the parties' intention underlying the invalid or unenforceable provision.  However, if the proposed modification or replacement of the invalid or unenforceable provision is held to deprive a party of a material benefit, the Agreement will terminate immediately.

15.7    Amendments.  Freescale reserves solely unto itself the right to reasonably amend or otherwise modify this Agreement at any time. In the event of an amendment or modification, Freescale will give thirty (30) days prior written notice to Representative. Within the thirty (30) days notification period, if the Representative elects not to continue the Agreement as amended or modified and so notifies Freescale in writing, the agreement will be deemed terminated and commission will be paid in accordance with Section 5.6.

15.8    Waivers.  No waiver of any default, misrepresentation or covenant will affect any prior or subsequent default, misrepresentation, or covenant.

15.9    No Third Party Beneficiaries.  This Agreement is for the exclusive benefit of the parties and does not create any rights enforceable by any third party.

15.10    Succession and Assignment.  This Agreement binds and inures to the benefit of the parties and their permitted successors and assigns.  Representative may not assign or delegate any of its obligations under this Agreement, either voluntarily or by operation of law.  Commissions are not assignable. Freescale may terminate this Agreement with cause in the event the Representative merges with another company, substantially changes its ownership or control, or experiences a substantial turnover of or reduction in employees or agents.

15.11    Counterparts.  This Agreement may be executed in one or more original counterparts, all of which together will constitute one agreement, and facsimile signatures will have the same effect as original signatures.

15.12    Headings and Captions.  Section headings and captions contained in this Agreement are for convenience only and will not affect the meaning or interpretation of this Agreement.

15.13    Construction.  Both parties have had adequate opportunity to obtain legal representation and this Agreement reflects arms' length negotiations.  Neither party will be deemed the drafter and no ambiguity in the Agreement will be construed against either party.

15.14    Dispute Resolution.    The parties will attempt to settle all disputes arising under or in connection with this Agreement through consultation and negotiation in good faith and a spirit of mutual cooperation.  If those attempts fail the parties may also agree to consider (but will not be obligated to engage in) forms of binding or non-binding alternative dispute resolution ("ADR") such as neutral fact-finding, mediation, arbitration or a minitrial.  Any dispute that is not resolved by the parties through negotiation or ADR within 6 months of the date of the initial demand for resolution by either party may then be submitted to the courts for resolution. Venue for any litigation will be in Travis County, Texas. The use of ADR procedures will not be construed

14

under the doctrines of laches, waiver or estoppel to affect adversely the rights of either party. Nothing in this Section 12.14 will prevent either party from resorting to judicial proceedings if: (i) good faith efforts to resolve the dispute under these procedures have been unsuccessful; (ii) interim relief from a court is necessary to prevent material and irreparable injury to one party or to third parties; (iii) necessary to prevent or stop a breach of any confidentiality provision or intellectual property rights set forth in this Agreement; or (iv) necessary to avoid the expiration of any applicable statute of limitations.

15.15  Claims.  Representative will notify Freescale in writing of any claim within six (6) months of the cause of said claim.  Failure to notify Freescale within six (6) months will constitute waiver of such claim. Automatic renewal of this agreement will also waive all claims arising from a cause preceding such automatic renewal unless written notice of the claim is given to Freescale prior to renewal.

15.16  Governing Law.  This Agreement will be governed by, construed, and enforced in accordance with the laws of the State of Texas as if entered into in that State by citizens of that State to be performed wholly within that State, and without regard to its conflict of laws provision. The United Nations Convention on Contracts for the International Sale of Goods will not apply to this Agreement.

15.17  Authority.  Each party represents and warrants that (i) it has the authority to enter into this Agreement without any additional approvals or consents, (ii) the person executing this Agreement on its behalf is duly authorized, and (iii) to the best of its knowledge, this Agreement is fully enforceable in accordance with its terms.

15.18  Entire Agreement.  This Agreement, including its Exhibits, constitutes the entire agreement between the parties regarding its subject matter, and supersedes all prior communications, negotiations, understandings, agreements or representations, either written or oral, between the parties regarding its subject matter.

**IN WITNESS WHEREOF**, the parties have caused this Agreement to be executed in their respective names by their duly authorized representatives.

**FREESCALE**

By (Signature): _CeRO J l_

Printed Name: _William Bradford_

Title: _Sr VP. Americas_

Date Signed: _5/31/07_

**[REPRESENTATIVE]**

By (Signature): _M.T.O'Neill_

Printed Name: _Michael O'Neill_

Title: _Officer_

Date Signed: _5/30/2007_

15

## EXHIBIT A

### FREESCALE ASSIGNED ACCOUNTS

| Account | Location | Freescale Customer Code |
|---------|----------|-------------------------|

Nokia
Nortel
Sun
Agilent
Systron
Donner
Red Octane
Etonnet
Logitech
EFI
Zircon
Curtiss

**FREESCALE**

By      _W. Bradford_

Title   _Sr VP. AMR's_

Date:   _5/31/07_

**REPRESENTATIVE**

By:     _MTONeill_

Title:  _Officer_

Date:   _5/30/2007_

16

p.16

Nov 14 07 02:02p

**EXHIBIT B**

**REPRESENTATIVE ASSIGNED ACCOUNTS**

Representative will receive Commission for <u>Factory Direct Orders and Authorized Distributor Orders</u> to any Freescale coded customers in the following territory codes:

| <u>Freescale Territory Code</u> | <u>Commission Rate</u> |
| --- | --- |
| Bay | 1.75% X Net Sales Billed + 5% X Net Sales Billed Growth |
| Sac | 1.75% X Net Sales Billed + 5% X Net Sales Billed Growth |

Representative will receive Commission for <u>Factory Direct Orders only</u> to the Freescale coded customers below:

| <u>Freescale Customer Code</u> | <u>Commission Rate</u> |
| --- | --- |
| Apple | 1% X Net Sales Billed below $10M + 2.5% X Net Sales Billed over $10M (Annual commission cap of $600K) |
| Cisco | 0.2% X Net Sales Billed + 1% of sales billed over the annual quota provided by Freescale |

Representative will receive <u>Design Win Incentive</u> for Design Wins at the following Freescale code customers:
- The Design Win Incentive for each Design Win is $1500 per one million dollars of Design Win W up to a maximum of $10,000.
- The maximum total of Design Win Incentives per year is $120,000.
- The maximum total for Design Win Incentives at Cisco per year is $60,000.

**Freescale Customer Code**
Cisco
Motorola-Symbol
Motorola-Netopia
Alcatel
Samsung
Juniper
Brocade
Foundry
Ericsson/Redback
Tellabs
ATI
Hewlett Packard
Extreme Networks

| FREESCALE | REPRESENTATIVE |
| --- | --- |
| By _W. Bradford_ | By: _M.T. O'Neill_ |
| Title _Sr. VP. AWR_ | Title: _Officer_ |
| Date: _5/31/07_ | Date: _5/30/2007_ |

17

Freescale Semiconductor, Inc.     West Parmer Lane, Austin, TX 78729 www.freescale.com



October 29, 2007

Mr. Michael O'Neill
Forte Technical Sales, LLC
2680 North First Street
Suite #210
San Jose, CA 95134

Subject:   Termination of Sales Representative Agreement between Freescale
           Semiconductor, Inc. and Forte Technical Sales, LLC, dated May 31, 2007 (the
           "Agreement")

Mr. Michael O'Neill

Freescale has elected to terminate the Agreement, in whole, for convenience, as provided
under Section 5.4 of the Agreement.   This letter constitutes the required notice of
termination. The termination will be effective at the close of business on December 31,
2007.  Freescale will continue to pay the retainer fees described in Section 4.1 through
this termination date.

Please let me know if I can answer any questions regarding this termination.

                          Sincerely,

                          Lou M. Lutostanski

                          Lou Lutostanski
                          Vice President,
                          Sales & Marketing for the Americas
                          Freescale Semiconductor, Inc.

# CIVIL LAWSUIT NOTICE

**ATTACHMENT CV-5012**

CASE NUMBER: **1 0 8 C V 1 0 8 9 0 0**

*Superior Court of California, County of Santa Clara*
*191 N. First St., San Jose, CA 95113*

## READ THIS ENTIRE FORM

*PLAINTIFFS* (the person(s) suing): Within 60 days after filing the lawsuit, you must serve each defendant with the *Complaint, Summons,* an *Alternative Dispute Resolution (ADR) Information Sheet,* and a copy of this *Civil Lawsuit Notice,* and you must file written proof of such service.

---

*DEFENDANTS* (The person(s) being sued): **You must do each of the following to protect your rights:**

1. You must file a written response to the *Complaint,* in the Clerk's Office of the Court, within 30 days of the date the *Summons* and *Complaint* were served on you;
2. You must send a copy of your written response to the plaintiff; and
3. You must attend the first Case Management Conference.

**Warning:** If you do not do these three things, you may automatically lose this case.

---

*RULES AND FORMS:* You must follow the California Rules of Court (CRC) and the Santa Clara County Superior Court Local Civil Rules and use proper forms. You can get legal information, view the rules and get forms, free of charge, from the Self-Service Center at 99 Notre Dame Avenue, San Jose (408-882-2900 x-2926), or from:

- State Rules and Judicial Council Forms: www.courtinfo.ca.gov/forms and www.courtinfo.ca.gov/rules
- Local Rules and Forms: http://www.sccsuperiorcourt.org/civil/rule1toc.htm
- Rose Printing: 408-293-8177 or becky@rose-printing.com (there is a charge for forms)

For other local legal information, visit the Court's Self-Service website www.scselfservice.org and select "Civil."

*CASE MANAGEMENT CONFERENCE (CMC):* You must meet with the other parties and discuss the case, in person or by telephone, at least 30 calendar days before the CMC. You must also fill out, file and serve a *Case Management Statement* (Judicial Council form CM-110) at least 15 calendar days before the CMC.

*You or your attorney must appear at the CMC. You may ask to appear by telephone – see Local Civil Rule 8.*

---

Your Case Management Judge is: **Mary Jo Levinger** _____ Department: **5** _____

The 1st CMC is scheduled for: (Completed by Clerk of Court)

       Date: **AUG 1 9 2008**  Time: **2:15 PM** in Department **5** _____

The next CMC is scheduled for: (Completed by party if the 1st CMC was continued or has passed)

       Date: _____  Time: _____ in Department _____

---

*ALTERNATIVE DISPUTE RESOLUTION (ADR):* If all parties have appeared and filed a completed *ADR Stipulation Form* (local form CV-5008) at least 15 days before the CMC, the Court will cancel the CMC and mail notice of an ADR Status Conference. Visit the Court's website at www.sccsuperiorcourt.org/civil/ADR/ or call the ADR Administrator (408-882-2100 x-2530) for a list of ADR providers and their qualifications, services, and fees.

*WARNING:* Sanctions may be imposed if you do not follow the California Rules of Court or the Local Rules of Court.

---

Form CV-5012
Rev. 07/01/07

**CIVIL LAWSUIT NOTICE**

Page 1 of 1

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF SANTA CLARA
## ALTERNATIVE DISPUTE RESOLUTION
### INFORMATION SHEET / CIVIL DIVISION

Many cases can be resolved to the satisfaction of all parties without the necessity of traditional litigation, which can be expensive, time consuming, and stressful. The Court finds that it is in the best interests of the parties that they participate in alternatives to traditional litigation, including arbitration, mediation, neutral evaluation, special masters and referees, and settlement conferences. Therefore, all matters shall be referred to an appropriate form of Alternative Dispute Resolution (ADR) before they are set for trial, unless there is good cause to dispense with the ADR requirement.

*What is ADR?*

ADR is the general term for a wide variety of dispute resolution processes that are alternatives to litigation. Types of ADR processes include mediation, arbitration, neutral evaluation, special masters and referees, and settlement conferences, among others forms.

*What are the advantages of choosing ADR instead of litigation?*

ADR can have a number of advantages over litigation:

< **ADR can save time.** A dispute can be resolved in a matter of months, or even weeks, while litigation can take years.

< **ADR can save money.** Attorney's fees, court costs, and expert fees can be reduced or avoided altogether.

< **ADR provides more participation.** Parties have more opportunities with ADR to express their interests and concerns, instead of focusing exclusively on legal rights.

< **ADR provides more control and flexibility.** Parties can choose the ADR process that is most likely to bring a satisfactory resolution to their dispute.

< **ADR can reduce stress.** ADR encourages cooperation and communication, while discouraging the adversarial atmosphere of litigation. Surveys of parties who have participated in an ADR process have found much greater satisfaction than with parties who have gone through litigation.

*What are the main forms of ADR offered by the Court?*

< **Mediation** is an informal, confidential process in which a neutral party (the mediator) assists the parties in understanding their own interests, the interests of the other parties, and the practical and legal realities they all face. The mediator then helps the parties to explore options and arrive at a mutually acceptable resolution of the dispute. The mediator does not decide the dispute. The parties do.

< Mediation may be appropriate when:
  < The parties want a non-adversary procedure
  < The parties have a continuing business or personal relationship
  < Communication problems are interfering with a resolution
  < There is an emotional element involved
  < The parties are interested in an injunction, consent decree, or other form of equitable relief

*-over-*





RUSCONI, FOSTER & THOMAS
ATTORNEYS AT LAW
30 KEYSTONE AVENUE
MORGAN HILL, CALIFORNIA 95037

CSC - Lawyers Incorporating Service
2730 Gateway Oaks Drive
Suite 100
Sacramento, CA    95833

**PROOF OF SERVICE**
**(CCP SECTION 446 AND SECTION 2015.5)**

**Forte Technical Sales,LLC vs Freescale Semiconductor**

**CASE NO.  108CV108900**

      I am a resident of the County of Santa Clara, State of California.  I am over the age of 18 years and not a party to the within action; my business address is 30 Keystone Avenue, Morgan Hill, CA 95037.

      On April 16, 2008, I served the following document entitled: **Summons, and Complaint for Damages** on the parties in this action as follows:

\_\_\_\_ **BY MAIL**: I caused such envelope with postage thereon, fully prepaid to be placed in the United States mail at Morgan Hill, California, in a sealed envelope addressed as follows:

\_\_XX\_\_\_\_ **BY PERSONAL SERVICE**: I caused such document(s) to be delivered by hand to the offices of addressee(s), as follows:

      CSC -Lawyers Incorporating Service
      2730 Gateway Oaks Drive, Suite 100
      Sacramento, CA 95833

_____**BY FEDERAL EXPRESS OR EXPRESS MAIL**: I caused such envelope to be hand-delivered to the offices of addressee(s) by such delivery service, as follows:

_____ **BY FACSIMILE**: I caused a true copy thereof to be transmitted by facsimile to the offices of the addressee(s) pursuant to CCP Section 1013(a)(2), with a report printed out from said machine showing receipt.  The facsimile number(s) is(are):

      I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

      Executed on April 16, 2008, at Morgan Hill, California.

      Deborah Crocker

PROOF OF SERVICE